UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**

OCT 3 1 2019 AM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JASON GOODMAN,
Plaintiff,

v.

ANDREW SAUL, COMMISSIONER, SSA
THOMAS ENGLISH, ALJ
SCOTT KARGOL, DIRECTOR
GEORGE FRANJEVIC, GS

Defendant(s)

JUDGE:
HONORABLE JOHN J. THARP JR.

CIVIL NO. 1:19 - cv - 05787

MAGISTRATE:
GABRIEL A. FUENTES

~~MOTION TO~~ AMENDED COMPLAINT & EXHIBITS, ~~SUMMONSES~~

10/31/19
CLERK WILL
RE-ISSUE
TO
USM

- Item 13 (Complaint)
- Exhibits (U 5pgs.)
- SUMMONSES

10/31/19

Item 13 Continued -

After successful completion of a different temporary-internship SSA assignment working for the a different office within the Agency, Chicago Regional SSA headquarters (Ex. F & G witness letters), I was hired as an SCT at the Chicago ODAR hearing office in September 2014 for the Pre/Post Development group along with the 9 other new hire SCTs for - Group A by Director Scott Kargol and was assigned to supervisor's GS Paulas, who later left the agency several months after I was hired. My new supervisor, GS Janusaitis, took GS Paulas's place and lastly GS Scott Richard became my supervisor after Janusaitis retired. Every tenured employee and new hire answered to, was assigned to and was responsible for work under a single Group Supervisor in the Chicago ODAR hearing office which consisted of a single group supervisor in charge over Groups A, B, C, D. respectively (Ex. Q ODAR roster).

I answered to and was assigned training and duties under Group A; GS Paulas, GS Janusatis and GS Richard group supervisors during my hire date to wrongful removal at the ODAR hearing office and my assigned supervisors regularly communicated with me, approved my benefit/leave time request and assigned me trainings, duties and Group A's volunteering. During orientation in October 2014, Director Kargol also requested I temporarily assist in the Scheduling Group C until management was to be able to acquire more permanent new hires for that department under Group C supervisor, GS Franjevic. He assured me the assistance was merely temporary and I would only be assisting Group C until my assigned Group A's formal new hire training began which programs and modules consisted of sporadic, broken and delayed process from Sep-Oct 2014 through Feb 2015.

Director Kargol caused me great stress and emotional harm because he never informed me GS Franjevic would ultimately be the supervisor responsible for rating my performance during assisting Group C's backlogged workloads & duties, despite excellent performance and meeting standards as a whole and under my assigned supervisor's in Group A. Right away from October 2014 through wrongful federal separation, GS Franjevic began assigning me an unachievable amount of scheduling duties despite none to minimal OJT, no formal scheduling training, unfairly holding me responsible to dishonest and negative evaluations that would undermine my effort and performance, and ultimately be used underhandedly terminate my employment. I spoke with Director Kargol about these concerns and Director Kargol continued to assure me that due to Group C being understaffed, an extensive case backlog and the government shutdown we need you to continue to help out Group C until their new hires come aboard and to continue doing a good job. I told him that I was not comfortable under Franjevic and that I wanted to go back to my sole responsibilities no different than from my fellow team member SCT new hires in Group A. Director Kargol dismisses my complaints and requests.

Out of the 9 total new hire SCTs I was the only new hire SCT that was receiving wholly disproportionate workloads from two Group Supervisors A and C from two wholly different departments work groups and was the only Group A SCT assisting Group C. This continued to cause me great stress and I felt overwhelmed and mistreated unfairly by Kargol and Franjevic against workplace regulations and policies. GS Franjevic comment to me, "They needed you here" and introduced Lead Case Technician Adams as my assigned Group C mentor to teach me the other databases utilized and missions different from Group A and to walk me through how to

Item 13 Continued -

complete tasks to assist in helping Group C's backlog mitigation. However, just days into assisting in Group C, I was warned by Group C team members at two different times, individually pulling me aside. Tenured Group C employees LCT Adams and Case Technician Allison cautioned me to beware of GS Franjevic because of his harassing and trying to terminate male black new hires, these conversations made me very uneasy and caused me stress & anxiety at the outset.

From hire date; September 2014 to July 2015, while assigned under my supervisors GS Paulas, Janusatis and Richard, I was required to attend Group A's orientation, side by side's, informal new hire trainings and also in February 2015, attending 6 hours/daily of lecture in Group A's NHT new hire formal web-based training. In addition, I had to complete up to 2 hours of assigned Group A computer-based training exercises along with my other Group A new hires. Right away subjecting me to an unrealistic misuse of power, GS Franjevic began to hold me responsible for tasks no other employee would reasonably have enough time to complete.

The subjugation inflicted upon me an extremely high level of stress and depression because no other Group A or Group C new hire or tenured employee was tasked with directives from two different supervisors. The abuse and misuse of power from Director Kargol and GS Franjevic was too much work as within weeks he was now falsely and egregiously monitoring, evaluating and holding me responsible for tasks such as EFT's, inputs and digital CD burns that I had not yet been trained on to assist in his short-staffed Group C. Simultaneously, In the Scheduling group, Group C, I received no formal training and was assigned an increased ALJ scheduling caseload unparalleled to my level of experience and had not received the scheduling group, Group C training as other tenured scheduling employees in that department as, no other new hires was assisting in Group C and I felt discriminated against (Ex. O & P job descriptions). Group C's GS Franjevic averred that all employees in the scheduling unit were responsible for the same duties and held to the same performance standards. I knew this statement was in direct contradiction to the standards expected of me. I was very distraught that Director Kargol and GS Franjevic encouraged me to be the only Pre/Post employee and Scheduling employee required to complete NHT formal training, computer-based modules and duties of Pre/Post group, Group A as well as an increased workload with no formal training of Scheduling Group C. It is important to clarify, I only received formal training for the Pre/Post group A through my assigned supervisors GS's Paulas and later GS Janusatis. I did not receive formal training for the Scheduling group I was requested to temporarily assist in, in Group C as falsely claimed by GS Franjevic.

From Sept 2014- July 2015 while working in my assigned Pre/Post group, Group A under GS Paulas, later GS Janusaitis, then GS Richard my responsibilities included orientation, NHT training and exercises approx. 8hrs/day, CD Burn for Hearing, Case Pulling, Queries, Interrogatories, Case Closing, Hearing Monitoring, Court Reporting, Front Desk Reception, Pre-hearing Conferences and various other duties too numerous to list (Ex. O & P). GS Franjevic accused me of spending too much time completing my assigned Group A volunteer duties and not spending enough time getting my Group C scheduling work done. Tenured Group C scheduler, CT Allison, took it upon himself to assist me in tackling some of the tasks GS

Item 13 Continued -

Franjevic unfairly assigned me when he had extra time. I told him I couldn't manage working in Group C any longer and he informed me even he, as a seasoned Group C tenured employee, it would be impossible to complete the amount of work I was unfairly being responsible for by Franjevic. GS Franjevic only gave out directives and never taught me a task or provided database navigation or coaching. GS Franjevic would only inform me whenever I had a question to, "get with LCT Adams, she's your mentor if you required assistance". LCT Adams was responsible for her own workloads, trainings & duties and could not fully nor adequately mentor, train or coach me during OJT, particularly so with Group C's more complicated time-sensitive processes and painstaking ALJ scheduling tasks. Group C OJT development Franjevic allotment to me during my employment was often postponed, sporadic and broken, however, GS Franjevic continued to unethically fabricate an unsatisfactory performance pattern in violation of my rights, privileges and equitable treatment under policies and regulations.

Director Kargol expressed an open-door policy where I participated in numerous sit-downs by walk-in but also along with Group A team members whereby, I clearly expressed; I could no longer handle GS Franjevic's treatment and workload. Director Kargol never addressed my complaints and only urged me to keep up the good work and I would no longer be required to assist Group C once the scheduling new hires came aboard after the government shutdown. At this time, unlike my fellow Group A team members, I have yet to receive my transit vouchers and HSPD access card. Kargol deceptively and maliciously never assigns post government shutdown new hire employees to Group C under Franjevic instead, places new hires Joseph Kilroy, Jacqueline Titus & Cassandra Shedwell, Sue McGregor in the SCT slots and further misleads me by slotting me under Group C, giving the false impression I had a consistent workload as all other employees (Ex. Q). Kargol never allowed me return to focusing only on my assigned duties SCT Group A duties as my new hire colleagues.

While assisting in Scheduling group, Group C under GS Franjevic, my required duties included Burning CDs for Medical and Vocational Experts; Scheduling MEs and VEs; Invoicing Experts; Reviewing and Analyzing Cases; Exhibiting Case Records; Contacting Claimants, Attorneys and Representatives; Scheduling Aged, Dire Need and Jail Cases; Scheduling Pre-Conference Hearings; Transferring Cases; among a host of other duties too numerous to list. In the Scheduling group, employee CT job description, it states all newly hired incumbents will perform in a trainee capacity, with assignments leading to being able to perform the full range of duties. Franjevic disparately held me to an unfair standard and responsible to infractions that were not accurate.

Approximately April 2015, GS Franjevic inappropriately and falsely charged, that he had over two score conversations with me and continued to hold me to a performance standard no employee could attain. GS Franjevic informs me that he would be taking over as my new supervisor and that I would be assigned to his Group C but, I would still be responsible for my Group A duties. I informed Director Kargol that GS Franjevic's harassment and mistreatment was too much, causing too much stress and responsibility and continuing to accuse me of not following directives and not completing tasks that I in no way could complete within a work day.

Item 13 Continued -

This caused me to work on credit and inadvertently remained after hours because of the exorbitant work directive pressures from Kargol and Franjevic.

GS Franjevic can say he did not believe I required reasonable accommodation because in the process of me addressing the issue, he shewed me away with an unwelcomed and highly inappropriate scoff exclaiming, "I don't know what's wrong with you, that is above my pay grade", failing to allow me to state my case or supply medical documentation. GS Franjevic threatened that in order to receive "satisfactory job performance" rating, it was mandatory that I complete all Pre/Post Group A formal, informal and OJT training and duties while simultaneously completing all his assigned Group C duties which consisted of an unmanageable caseload in the Scheduling group, Group C. It is important to reiterate, GS Franjevic, himself averred that all employees in the scheduling unit were responsible for the same duties and held to the same performance standards, violating the new-hire job expectations policy. I was the only Pre/Post Group A employee and Scheduling Group C employee given the false obligation to perform the full range of duties of both work groups under two different supervisors, while working in the capacity of a trainee where I received no formal training for Scheduling group, Group C. Director Kargol and GS Franjevic committed disability discrimination by failing to acknowledge or provide reasonable accommodation requests, by failing to provide requested workload assistance and more schedule flexibility for Group C workloads. Furthermore, in April 2015, Franjevic removed me from Group A and permanently assigned me to Group C despite my ongoing complaints to Kargol that I could no longer manage assisting Group C. Kargol allowed Franjevic to hijack my Group A's evaluation and assessments in effort to influence unfair appraisals and unethical assessments of my performance.

Early March 2015, due Franjevic's unfair treatment and infliction of emotional distress at the workplace, I was admitted by my mental health doctor's requests to remain at Hines VA hospital for one week due to being overworked by Kargol and Franjevic aggravating my mental conditions, paranoia and caused me psychotic stress episodes (Ex. R plaintiff medical). GS Franjevic scolds me, against my employee protections, privileges and rights, that he had to reassign my work while I was hospitalized upon my return to Chicago ODAR office causing immediate additional stress and belittlement unrelated to managements false claim, I merely suffered from HBP. I never nor do I have any documented diagnosis of HBP (Ex. R). GS Franjevic also told me that I could not do anything right and that other employees were doing my work for me causing me additional stress, attempting to shame and guilt me due to my hospitalization. Any reasonable person would affirm this degree of toxicity is highly inappropriate of any agency supervisor toward any similarly situated employee.

April 2015, GS Franjevic began to facilitate wrongful termination record based upon a fabricated "unsatisfactory" performance appraisal where he claims I received no rating. During a meeting with Director Kargol, I again requested to return to the Pre/Post group under my Group A supervisor with my fellow SCT new hires. Director Kargol fail to acknowledge my pleadings and hardships, placating my job performance and told me I was still needed in the Scheduling group under Franjevic. May 2015, I received Certificate of Appreciate in recognition of public service from Director Kargol (Ex. L HOCALJ appreciation award). GS Franjevic violated the

Item 13 Continued -

PACS appraisal system by not providing progressive counseling and training for alleged poor work performance. CT Allison pulled me aside in tears out of concern for how I was being treated (Ex. A colleague reference letter).

June 2015, after administering a verbally manipulated "Unsatisfactory" PACS performance meeting that Franjevic used to falsely justify my separation, Franjevic texted me a highly offensive and unwelcomed text to my personal cellphone; displaying a cat in a boxing ring with the text "bring it on" creating a hostile work environment. He again falsely alleges I appreciated the communication when in truth, I felt demoralized and bullied by the communication (Ex. N Franjevic hostile text message).

Oct 2014 to March 2015 I completed the ongoing mission critical 'work directive' of scheduling Aged Cases, however, Franjevic averred I had failed and continue to add more cases and tasks to my workloads, fortifying an unattainable and unreasonable goal of successful completion of his assigned objectives. Franjevic assigned me an ALJ caseload approx. 300 claimants which was unreasonable and unachievable for even a tenured employee and stated he would use and abuse me up in scheduling meetings before I was to no longer responsible with assisting Group C. From

October 2015 – April 2015, I notified Kargol of Franjevic's harassment, intimidation, unfair evaluation, workload and training. April 2015, Kargol's repeatedly unaddressed my complaints and dodged my complaints of harassment exclaiming, Franjevic fault finds and nitpicks you and fails to recognize your positive contributions and he was to put up with him too. Kargol failed to investigate my ongoing complaints, verbal reports and reasonable accommodation requests prior to my wrongful termination.

October 2014 – June 2015, on top of the all the adverse actions committed against plaintiff, Franjevic continued made harassing and inappropriate comments regarding bible verses posted in my work cubicle which caused me distress. Franjevic intimidatingly stated "Do you expect those verses to help you?" and "The Lord doesn't have my back; I'm already living in hell" I felt challenged, confronted and disrespected by his abuse of positional power against me.

Dec 2014 – May 2015, I submitted complex eBP; eView, CPMS, DGS and DART databases and Telework ideas in line with SSA's Vision 2025 initiative to improve upon the Agency's service to the public that were recognized by SSA headquarters where I was conferenced called from SSA HQ in Baltimore, MD by David Grandy and Joanne Schulman for job well done. Furthermore, I was informed my submissions would not go unrecognized in effort to advance more effective and efficient outcomes of SSA mission objectives. In my contributing to innovative strategies to better serve the public, June 2015 ALJ English mischaracterizes management describing plaintiff spent too much time on idea submissions which contributed to not focusing on my workloads. Inasmuch, the drafting of my recognized ideas was largely implemented using on my own personal time outside of work and break times. June 2015 Kargol and Franjevic unfairly placed me on paid administrative leave prior to termination and coldly consoles me he would give any new employment I pursued a positive recommendation. Kargol also states I can no longer return to the Chicago ODAR office and my belongings would

Item 13 Continued -

be mailed to me. I never received all my personal effects, documents and confiscating plaintiff's workload data. Kargol and Franjevic even lacked the audacity to issue the wrongful termination themselves, instead while away on vacation, tasked ALJ English who had only been in an Acting HOCALJ capacity for weeks with the Agency.

I was the only employee out of the 9 new hire SCTs in the Chicago ODAR office since hire date to face wrongful removal, to never be issued HSPD card credentials and transit subsidy vouchers supporting a clear pretext that Kargol and Franjevic conspired to unethically scheme SSA agency policy, procedures and regulations and misused and abused their offices against me, subjecting plaintiff to a vehemently discriminatory and hostile work environment.

As a result of these traumatic events I've suffered, I continue to experience worsened severe mental and emotional distress and undue financial hardships and compromise of quality of life. I have required undergoing pyscho-social recovery counseling and ongoing treatment as a result of the disrespect, mistreatment and libel in that workplace, where at times hearing voices and causation of suicidal thoughts due to the unfair, unethical and continuously unaddressed treatment. I still this day suffer from that experience that increased the severity of my mental health conditions, causing anxiety, emotional anguish and stress due to the adverse actions taken by the Agency, English, Kargol and Franjevic (Ex. M, R & S plaintiff med, personal & work e.g.). Defendants continue to affect hardship and stress as, plaintiff lacks sufficient quarters for SSA disability benefits, subsequent to the timely filing of this civil action, Agency urges me to file for benefits (Ex. U p1-3 SSA, IRS and tax burden corr.). Defendants precipitated an exacerbated Federal and State 2015 tax liability I am still to this day liable for (Ex. R p11, U p4-5). I am yet marred with this wrongful federal termination with forced neglect of any credit or award in my Vision 2025 contribution efforts (Ex. M, R p11). The attached exhibits in this description compiled from previous and subsequent employers, witness statements and support to corroborate my true character, work ethic and performance (Ex. A-L, S & T personal witness letters). These workplace harms should have never been suffered by plaintiff and must be prohibited from occurring again in the agency. Plaintiff respectfully demand remedies to make plaintiff whole in accordance with item 16(f), (g) & (h) of his complaint as; Defendants egregiously violated Title VII, Whistleblower Protections Act, Retaliation, Reprisal, Rehabilitation Act of 1973/ADA and Agency Regulations of Permanent and Seasonal Employees against me including but not limited to; a. SSA Commissioner Equal Opportunity Policy, b. Policy Prohibiting Discrimination Against Employees and Applicants for Employment

c. Policy Maintaining a Non-Hostile Workplace Free of Discrimination Harassment

d. Policy on the Prevention and Elimination of Harassment in the Workplace

e. SSA/AFGE Article 3, Employee Rights

f. SSA/AFGE Article 21, Performance

g. SSA/AFGE Article 23, Disciplinary and Adverse Actions

h. SSA/AFGE Article 33, Temporary, Probationary, Part-Time

Item 13 Continued -

Attached to this complaint reference Item 7.2 (a), (b) & (c) is plaintiff's June 2019, OFO decision on request for reconsideration docket #2019002413 where defendant defaulted defense of this matter at exhaustion of process.

*Jason Goodman*

922 North Blvd #401

Oak Park, IL 60301

J5518@aol.com

708.435.0404

7 of 7

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Important Information

#000003680   I=000000   ENTITLEMENT 1019

3678 1 MB 0.425



JASON L GOODMAN
922 NORTH BLVD APT 401
OAK PARK IL 60301-1242

Social Security Administration
PO Box 17711
Baltimore, MD 21235-7711
Date: October 4, 2019
SSN #: 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  A

Our records indicate that you may be entitled to Medicare or monthly Retirement benefits on your own Social Security claim number.

**What You Need to Do**

You must file an application before we can pay you benefits or start your Medicare coverage. You should apply right away if you want these benefits.

You can file your application online, by phone, or at any Social Security office.

**Why You Should Complete Your Application Online**

Applying for Retirement benefits online is secure, quick, and easy. For your convenience, you can apply at www.socialsecurity.gov on the Internet.

- We make sure the information you send through our website is confidential.
- Applying online saves time.
- You can apply now. You do not have to wait for an appointment with a Social Security office.

**Other Ways to Apply**

If you do not want to apply online, you can apply by phone. Please call 1-800-772-1213 (TTY number, 1-800-325-0778) between 7 a.m. and 7 p.m., Monday through Friday.

You can also apply at a Social Security office. Please call first to make an appointment. This will reduce your wait.

See Next Page



# Your payment would be about
# $1,226 a month
at full retirement age

Jason L. Goodman                                                                 June 2, 2019

# Your Social Security Statement

Your *Social Security Statement* tells you about **how much you or your family would receive** in disability, survivor, or retirement benefits. It also includes our record of your lifetime earnings. Check out your earnings history, and **let us know right away if you find an error**. This is important because we base your benefits on our record of your lifetime earnings.

Social Security benefits are **not intended to be your only source of income when you retire**. On average, Social Security will replace about 40 percent of your annual pre-retirement earnings. You will need other savings, investments, pensions, or retirement accounts to make sure you have enough money to live comfortably when you retire.

                                                                    Social Security Administration

Follow the Social Security Administration at these social media sites.    

EXHIBIT U 3 of 5

# Your Estimated Benefits

| | |
|---|---|
| **\*Retirement** | You have earned enough credits to qualify for benefits. At your current earnings rate, if you continue working until... |
| | your full retirement age (67 years), your payment would be about.................................. $ 1,226 a month |
| | age 70, your payment would be about.......................................................................... $ 1,595 a month |
| | age 62, your payment would be about.......................................................................... $ 779 a month |
| **\*Disability** | To get benefits if you become disabled right now, you need 23 credits of work, and 20 of these credits had to be earned in the last 10 years. Your record shows you do not have enough credits in the right time period. |
| **\*Family** | If you get retirement or disability benefits, your spouse and children also may qualify for benefits. |
| **\*Survivors** | You have earned enough credits for your family to receive survivors benefits. If you die this year, certain members of your family may qualify for the following benefits: |
| | Your child.................................................................................................................... $ 697 a month |
| | Your spouse who is caring for your child................................................................... $ 697 a month |
| | Your spouse, if benefits start at full retirement age.................................................... $ 930 a month |
| | Total family benefits cannot be more than................................................................. $ 1,395 a month |
| | Your spouse or minor child may be eligible for a special one-time death benefit of $255. |
| **Medicare** | You have enough credits to qualify for Medicare at age 65. Even if you do not retire at age 65, be sure to contact Social Security three months before your 65th birthday to enroll in Medicare. |

\* Your estimated benefits are based on current law. Congress has made changes to the law in the past and can do so at any time. The law governing benefit amounts may change because, by 2035, the payroll taxes collected will be enough to pay only about 80 percent of scheduled benefits.

**We based your benefit estimates on these facts:**
Your date of birth (please verify your name on page 1 and this date of birth).................... August 2, 1974
Your estimated taxable earnings per year after 2019............................................................. $30,667
Your Social Security number (only the last four digits are shown to help prevent identity theft)........... XXX-XX-5518

# How Your Benefits Are Estimated

To qualify for benefits, you earn "credits" through your work — up to four each year. This year, for example, you earn one credit for each $1,360 of wages or self-employment income. When you've earned $5,440, you've earned your four credits for the year. Most people need 40 credits, earned over their working lifetime, to receive retirement benefits. For disability and survivors benefits, young people need fewer credits to be eligible.

We checked your records to see whether you have earned enough credits to qualify for benefits. If you haven't earned enough yet to qualify for any type of benefit, we can't give you a benefit estimate now. If you continue to work, we'll give you an estimate when you do qualify.

**What we assumed** — If you have enough work credits, we estimated your benefit amounts using your average earnings over your working lifetime. For 2019 and later (up to retirement age), we assumed you'll continue to work and make about the same as you did in 2017 or 2018. We also included credits we assumed you earned last year and this year.

Generally, the older you are and the closer you are to retirement, the more accurate the retirement estimates will be because they are based on a longer work history with fewer uncertainties such as earnings fluctuations and future law changes. We encourage you to use our online Retirement Estimator to obtain immediate and personalized benefit estimates.

We can't provide your actual benefit amount until you apply for benefits. **And that amount may differ from the estimates above because:**
(1) Your earnings may increase or decrease in the future.
(2) After you start receiving benefits, they will be adjusted for cost-of-living increases.

(3) Your estimated benefits are based on current law. **The law governing benefit amounts may change.**
(4) Your benefit amount may be affected by **military service, railroad employment or pensions earned through work on which you did not pay Social Security tax.** Visit *www.socialsecurity.gov* to learn more.

**Windfall Elimination Provision (WEP)** — If you receive a pension from employment in which you did not pay Social Security taxes and you also qualify for your own Social Security retirement or disability benefit, your Social Security benefit may be reduced, but not eliminated, by WEP. The amount of the reduction, if any, depends on your earnings and number of years in jobs in which you paid Social Security taxes, and the year you are age 62 or become disabled. To estimate WEP's effect on your Social Security benefit, visit *www.socialsecurity.gov/WEP-CHART*. For workers newly eligible in 2019, the maximum monthly reduction in PIA is $463. For more information, please see *Windfall Elimination Provision* (Publication No. 05-10045) at *www.socialsecurity.gov/WEP*.

**Government Pension Offset (GPO)** — If you receive a pension based on federal, state or local government work in which you did not pay Social Security taxes and you qualify, now or in the future, for Social Security benefits as a current or former spouse, widow or widower, you are likely to be affected by GPO. If GPO applies, your Social Security benefit will be reduced by an amount equal to two-thirds of your government pension, and could be reduced to zero. Even if your benefit is reduced to zero, you will be eligible for Medicare at age 65 on your spouse's record. To learn more, please see *Government Pension Offset* (Publication No. 05-10007) at *www.socialsecurity.gov/GPO*.

# 2019 Tax Amnesty Program
## Notice of Eligibility of Certain Debt

**STATE OF Illinois**
**DEPARTMENT OF REVENUE**
tax.illinois.gov

September 13, 2019

Letter ID: L1040096304

JASON L. GOODMAN
1247 CLINTON AVE APT 1E
BERWYN IL 60402-1024

Taxpayer ID: XXX-XX-5518
Reporting period: December 2015
Return type: IL-1040
Project: CP2NF

### Pay eligible tax debt October 1, 2019, through November 15, 2019, and the eligible penalty and interest charges will be *waived*.

Illinois Department of Revenue records show that you have an outstanding Illinois Individual Income Tax liability that qualifies for the 2019 Illinois Tax Amnesty program.

**What debt qualifies?**
Eligible tax debt is for tax periods ending after June 30, 2011, and prior to July 1, 2018. If you failed to file a tax return or incorrectly reported the liability due on a previously filed return for these tax periods, now is the time to make corrections and pay the tax. If you agree with the amount shown due on the enclosed EDA-131, Examiner's Report, you may pay the liability in full and no additional tax returns or documents are required.

If you do not agree, you may make corrections, sign and return the enclosed Form EDA-131, Examiner's Report, or file Form IL-1040-X, Amended Individual Income Tax Return. You must also include any required documentation and payment of the liability shown on the return.

**If the eligible tax debt is paid in full between October 1, 2019, and November 15, 2019, eligible penalty and interest will be waived!** Payments received before October 1, 2019 and after November 15, 2019, do **not** qualify for amnesty.

**Warning!** If you do not pay your eligible tax debt in full, penalty and interest charges will **not** be waived.

For more information on the 2019 Illinois Tax Amnesty program, visit our website at **tax.illinois.gov**. If you have questions about your account, please call us weekdays from 8:00 a.m. to 4:00 p.m. at 217 782-7962.

**For information about**
- How to pay   Next page
- What to file

Note: If you are under bankruptcy protection, see the bankruptcy information section on the back of this notice for more information.

~ Postmark must be between October 1, 2019, and November 15, 2019 ~    IDOR-99FSEU (R-08/19)

P-002888

*Cut on dotted line and detach. Retain top portion for your records and return bottom portion with your payment.*

**FSEU**    (N-07/19)    (137)

Letter ID: L1040096304
JASON L. GOODMAN

**Total amount due: $1,164.00**

Write the amount you are paying below.

$_____._____

Write your Taxpayer ID on your check.

**Mail this voucher and your payment to:**
FEDERAL STATE EXCHANGE UNIT
ILLINOIS DEPARTMENT OF REVENUE
PO BOX 19026
SPRINGFIELD IL 62794-9026

000 006 004456962006 031 123199 7 0000000116400



 Department of the Treasury
Internal Revenue Service
Kansas City, MO 64999-0030

| | |
|---|---|
| Notice | CP503 |
| Tax Year | 2015 |
| Notice date | July 23, 2018 |
| Social Security number | 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 |
| To contact us | Phone 1-800-829-0922 |
| Your Caller ID | 200270 |
| Page 1 of 6 | |

EXHIBIT U pg 5 of 5 pgs

009085.728149.346873.13207 2 AB 0.408 1490


)09085

JASON GOODMAN
1247 CLINTON AVE APT 1E
BERWYN IL 60402-1024

Second reminder: You have unpaid taxes for 2015
# Amount due: $1,766.85

As we notified you before, our records show you have unpaid taxes for the tax year ended December 31, 2015 (Form 1040A). If you don't pay $1,766.85 by August 2, 2018, the amount of interest will increase and additional penalties may apply.

If you already have an installment or payment agreement in place for this tax year, then continue with that agreement.

**Billing Summary**

| | |
|---|---:|
| Amount you owed | $1,734.20 |
| Failure-to-pay penalty | 15.94 |
| Interest charges | 16.71 |
| Amount due by August 2, 2018 | $1,766.85 |

Continued on back...

---



**Payment**



JASON GOODMAN
1247 CLINTON AVE APT 1E
BERWYN IL 60402-1024

| | |
|---|---|
| Notice | CP503 |
| Notice date | July 23, 2018 |
| Social Security number | 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 |

- Make your check or money order payable to the United States Treasury.
- Write your Social Security number (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), the tax year (2015), and the form number (1040A) on your payment and any correspondence.

Amount due by
August 2, 2018

$1,766.85

INTERNAL REVENUE SERVICE
KANSAS CITY, MO 64999-0202

350605518 DP GOOD 30 0 201512 670 00000176685



## CERFITICATE OF SERVICE

I, the undersigned, hereby certify that I served the foregoing document(s) to the parties indicated below by means indicated below on the date of signature below:

The General Counsel
Social Security Administration
Room 617, Altmeyer Building
6401 Security Blvd
Baltimore, MD 21235-6401

By: Clerk of the Court via
CM/ECF

_____ 10/31/19
Jason Goodman – Plaintiff
922 North Blvd #401, Oak Park, IL 60301
708.435.0404 (phone)
J5518@aol.com (email)